James LANDRUM, Appellant,

v.

The STATE of Texas, Appellee.

No. 1026–97.

Court of Criminal Appeals of Texas,
En Banc.

March 18, 1998.

Christian T. Souza, Dallas, for appellant.

Anne B. Wetherholt, Asst. Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for State.

MEYERS, Judge, delivered a dissenting opinion in which PRICE, Judge, joined.

Appellant's sole ground for review is whether the Court of Appeals erred in holding polygraph evidence per se inadmissible. Because a per se rule is no longer appropriate under *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim.App.1992) and *Hartman v. State,* 946 S.W.2d 60 (Tex.Crim.App.1997), I dissent to the Court's refusal to grant this petition for discretionary review.

During the pre-trial hearing on Appellant's motion to suppress his confession, Appellant asserted his confession was involuntary because it was given while he was under the influence of methamphetamines and marijuana. Appellant attempted to present polygraph results and testimony of a polygraph expert to support his claim that he was under the influence of drugs when the confession was given. The trial court held the polygraph evidence per se inadmissible, and denied Appellant's request.

The Court of Appeals affirmed the decision of the trial court, citing this Court's long history of categorically prohibiting the admission of polygraph evidence. This Court's decisions consistently state that polygraph evidence is inadmissible for any purpose, regardless of the circumstances. Appellant now asks this Court to review this policy in light of our evidentiary decisions in *Kelly* and *Hartman.*

I.

In the federal court system, the rule of per se inadmissibility was grounded, in large part, in the "general acceptance" standard enunciated in *Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir.1923). The *Frye* court was asked to determine the admissibility of a "systolic blood pressure deception test," a precursor to what we now know as a polygraph test. *Frye* became the evidentiary standard in the federal courts, and was also adopted by most of the states. In 1993 the federal courts replaced the *Frye* standard of "general acceptance" with the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court in *Daubert* concluded that under Federal Rule of Evidence 702, the proper inquiry is whether the scientific evidence is relevant and reliable. This standard "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592–93, 113 S.Ct. at 2796. The *Daubert* court indicated that this standard would apply to all types of proffered scientific evidence, not just novel evidence. *Id.* at 593 n. 11, 113 S.Ct. at 2796 n. 11.

While this Court never expressly embraced the *Frye* standard, a *Frye*-like test of "general acceptance" determined the admissibility of novel scientific evidence prior to the adoption of the Texas Rules of Criminal Evidence. Under this standard, Texas courts also developed a rule that polygraph evidence was per se inadmissible.[1] The Tex-

1. It is notable that since the promulgation of the Texas Rules of Evidence, this Court has not singled out any type of evidence for a per se exclusionary rule.

as rule has been strictly applied to exclude polygraph evidence under all circumstances, even if the parties stipulate to it, even where the polygraph was orchestrated by the state and tends to be exculpatory. In 1992 this Court decided *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App.1992), which held that novel scientific evidence which is shown to be relevant and reliable is admissible under Rule of Criminal Evidence 702, subject to Rule of Criminal Evidence 403:

> under Rule 702 the proponent of novel scientific evidence must prove to the trial court, by clear and convincing evidence and outside the presence of the jury, that the proffered evidence is relevant. If the trial court is so persuaded, then the evidence should be admitted for the jury's consideration, unless the trial court determines that the probative value of the evidence is outweighed by some factor identified in Rule 403.

*Kelly*, 824 S.W.2d at 573. This standard is virtually identical to the one later formulated by the United States Supreme Court in *Daubert*. Since then, we have held that the *Kelly* test applies to all proffered scientific evidence, not just "novel" scientific evidence. *Hartman v. State*, 946 S.W.2d 60 ( Tex.Crim. App.1997) ("The standard adopted by this Court in *Kelly* applies to all scientific evidence offered under Rule 702.").

## II.

In light of *Daubert*, the federal courts began to reexamine admissibility of polygraph evidence. For example, the Fifth Circuit recently held that polygraph evidence is not per se inadmissible in criminal proceedings, but is admissible in accordance with *Daubert*, Rule 702, and other applicable evidentiary requirements. *United States v. Posado*, 57 F.3d 428 (5th Cir.1995). That court specifically recognized the tremendous advances in polygraph instrumentation, technique, and accuracy since the *Frye* era.

In addition, many states which had adopted the *Frye* standard have reexamined the admissibility of polygraph evidence since *Daubert* was decided. Twenty-two states currently allow the admission of polygraph evidence under specified circumstances, such as on stipulation of the parties. New Mexico treats polygraph evidence similarly to other types of scientific testimony, but has created additional safeguards specifically for polygraph evidence. *See Arguments Heard*, 62 Cr. L. 3069 (Nov. 12, 1997).

Although the United States Supreme Court has not addressed the admissibility of polygraph evidence since *Daubert*, it recently heard arguments in a case challenging a per se inadmissibility rule as a violation of the Sixth Amendment right to present a defense.[2]

## III.

In the past, parties often challenged the admissibility of polygraph evidence due to its "unreliability." Many experts now agree the question of reliability should be reexamined in light of new evidentiary standards and advancements in polygraph equipment and training. The fact that the polygraph test was "unreliable" in the past may not necessarily mean that it is "unreliable" now. One legal scholar points out that a great deal of lay testimony routinely admitted during trial is at least as inaccurate and unreliable, and other forms of scientific evidence also involve risks of instrumental or judgmental error. KENNETH S. BROWN ET AL., McCORMICK ON EVIDENCE § 206(B) (John W. Strong ed., abridged 4th ed.1992).

The United States federal government recognizes the reliability and usefulness of polygraph information. For example, polygraph tests are used to screen potential personnel, as well as in some criminal investigations. High security jobs in the Department of Defense and other federal agencies require

---

**2.** *United States v. Sheffer*, Docket No. 96–1133 (argued Nov. 3, 1997), arose out of a military prosecution. In 1987 the military's highest court recognized technological advancements in polygraph techniques and held that service members charged with criminal offenses should be allowed to show that polygraph results meet the admissibility requirements of Mil. R. Ev. 702, which is identical to Fd. R. Ev. 702. *United States v. Gipson*, 24 M.J. 246 (U.S.Ct.Mil.App.1987). In 1989 President Bush responded with Mil. R. Ev. 707, prohibiting both defense and prosecution from introducing polygraph evidence.

polygraph testing, and employees who refuse to be tested can be transferred. *See Arguments Heard,* 62 Cr. L. 3069 (Nov. 12, 1997).

### IV.

We have long held the jury is the exclusive judge of the credibility of witness testimony. *See, e.g., McFarland v. State,* 928 S.W.2d 482, 496 (Tex.Crim.App.1996); *Barnes v. State,* 876 S.W.2d 316, 321 (Tex.Crim.App.), *cert. denied,* 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). Pointing to Rule 702's requirement that scientific evidence "assist the trier of fact," the Court of Appeals in the instant case reasoned, "[i]nstead of aiding the jury in determining a witness' credibility, polygraph evidence impermissibly decides credibility, which supplants the jury's decision." But this Court has also recognized that it is the jury's job, as the trier of fact, to reconcile conflicts in the evidence. *See, e.g., Losada v. State,* 721 S.W.2d 305, 309 (Tex. Crim.App.1986). As part of this task, the jury is free to believe and disbelieve any witness. Likewise, the jury may choose how to weigh polygraph evidence, just as it may disbelieve other types of scientific and expert evidence and testimony. We allow juries to examine many other types of evidence that are at least equally persuasive, when adequate procedural safeguards have been implemented.

### V.

Regardless of what we might ultimately conclude, we ought to re-examine polygraph evidence under the test established in *Kelly* for admissibility under Rule 702. *Cf. United States v. Posado,* 57 F.3d 428 (5th Cir.1995). I dissent to the Court's refusal to entertain this question.