**John Chris HERNANDEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 09–98–429 CR.**

Court of Appeals of Texas, Beaumont.

Submitted Dec. 9, 1999.

Decided Feb. 2, 2000.

Rehearing Overrule March 9, 2000.

Tony Aninao, Houston, for appellant.

Mike Aduddell, Atty. Pro Tem., Conroe for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

A jury found John Chris Hernandez guilty of capital murder, attempted capital murder, and aggravated kidnapping. The jury's finding on the mitigation special issue of the capital murder punishment charge resulted in a sentence of imprisonment for life in the Texas Department of Criminal Justice, Institutional Division.

The jury assessed punishment at life and a $5,000 fine for attempted capital murder and aggravated kidnapping. The life sentences were ordered to be served concurrently. Hernandez raises sixteen points of error in his appeal.

The first two points of error concern the sentences of life imprisonment, viz.:

> Point of error one: Appellant's convictions for capital murder, attempted capital murder, and aggravated kidnapping and three life sentences should be reversed for a new trial, because the prosecution of appellant and the three life sentences imposed were so grossly disproportionate to the sentences imposed on other equally culpable co-defendants as to result in such a shocking miscarriage of justice, violative of the appellant's due process rights under the Texas Constitution.

> Point of error two: Appellant's convictions for capital murder, attempted capital murder, and aggravated kidnapping and three life sentences should be reversed for a new trial, because the prosecution of appellant and the three life sentences imposed were so grossly disproportionate to the sentences imposed on other equally culpable co-defendants as to result in such a shocking miscarriage of justice, violative of the appellant's due process rights under the United States Constitution.

Disproportionality of sentences is usually employed in analyzing a claim of cruel and unusual punishment in violation of Article I, Section 13 of the Texas Constitution or the Eighth Amendment to the United States Constitution. See Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); Solem v. Helm, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). Hernandez raises his claims solely upon Article I, Section 19 of the Texas Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution. At any rate, we would not address the merits of a claim

that the sentences violated the state and federal prohibitions against cruel and unusual punishments, because Hernandez failed to raise the issue before the trial court. Keith v. State, 975 S.W.2d 433, 433 (Tex.App.—Beaumont 1998, no pet.); TEX. R.APP. P. 33.1. Hernandez had no objection to the pronouncement of sentence, and did not mention the issue in his motion for new trial. Not every issue relating to due process actually implicates due process rights; we must decide if Hernandez presents a point of error concerning a non-waivable systemic requirement. See Marin v. State, 851 S.W.2d 275, 280 (Tex.Crim.App. 1993), overruled in part on other grounds by Cain v. State, 947 S.W.2d 262 (Tex. Crim.App.1997).

None of the cases cited by the appellant support his federal due process claim. Most of the cases cited by the appellant in support of his federal due process claim involve the application of the federal sentencing guidelines. U.S. v. Ray, 920 F.2d 562 (9th Cir.1990); U.S. v. Nelson, 918 F.2d 1268 (6th Cir.1990); U.S. v. Mejia–Orosco, 867 F.2d 216 (5th Cir.1989). The federal sentencing guidelines reflect a conscious decision on the part of the federal government to embrace a penal philosophy "that the punishment should fit the crime and that the main purpose of imprisonment is punishment" as opposed to the rehabilitation-based penal philosophy based upon "individualized" sentences. Mejia–Orosco, 867 F.2d at 218. The federal cases examining the due process implications of the federal sentencing guidelines are of absolutely no assistance to a due process analysis of sentences from a jurisdiction that does not superimpose a culpability grid over the punishment range for the particular grade of offense involved. Furthermore, none of these cases resulted in a finding of a violation of due process. The pre-guidelines case cited by Hernandez held that, where the sentence is within the statutory limits, the fact that co-defendants received lesser sentences will not entitle the accused to relief. Shep-

*ard v. United States,* 257 F.2d 293 (6th Cir.1958).

In only one of the cases cited by Hernandez in support of his federal due process claim did the court find a due process violation. *U.S. v. Capriola,* 537 F.2d 319 (9th Cir.1976). The error in *Capriola* lay not in the assessment of a sentence substantially disparate from that given to co-defendants, but in the trial court's failure to state for the record why he assessed a greater sentence. The Court of Appeals was concerned about the possibility that the defendant received a harsher sentence because he exercised his right to stand trial. *Id.* at 321. Here, the trial court's reason for sentencing Hernandez to life is obvious from the record: the judge sentenced the defendant in accordance with the jury's finding.

Here, the jury determined sentences within the range for the offenses for which the appellant was found to have committed. There is no allegation of judicial bias or prosecutorial misconduct. The fact that accomplices who cooperated with the government received lesser sentences does not, in and of itself, implicate the federal due process rights of the appellant. Point of error two is overruled.

■ None of the cases cited in support of his State due course of law argument involve a violation of Article I, Section 19 of the Texas Constitution. One court reviewing a disparate sentence claim under Article I, § 19, held the error was waived because it was not presented to the trial court. *Robinson v. State,* 906 S.W.2d 534, 536 (Tex.App.—Tyler 1995, no pet.). Assuming for the sake of argument that the contemporaneous objection rule does not apply to a claim challenging the constitutionality of the process by which a sentence was reached, the gravamen of Hernandez's complaint focuses on the fact the other persons involved in the crime received lesser sentences because they testified for the prosecution. There is no constitutional requirement that a co-defendant who testifies for the prosecution must re-

ceive the same punishment the defendant received, nor is there any constitutional requirement for a comparative proportionality review of the appellant's sentence. *DeGarmo v. State,* 691 S.W.2d 657, 663 (Tex.Crim.App.1985), *overruled on other grounds by Leday v. State,* 983 S.W.2d 713, 725 (Tex.Crim.App.1998). Hernandez did not establish that his conviction and sentence were obtained through the use of perjured testimony. Since a plea bargain agreement in return for cooperation reflects a legitimate state interest, absent a showing of misconduct Hernandez's rights to due course of law are not implicated. Point of error one is overruled.

■ Points of error three and four present a multiple punishments challenge, *viz.:*

Point of error three: Appellant's conviction and life sentence for the aggravated kidnapping of Felipe Martinez, Jr., and conviction and life sentence for the attempted capital murder (based on the aggravated kidnapping) of Felipe Martinez, Jr., arising out of the same transaction, violated the proscription against multiple punishments for the same offense contained in the double jeopardy clause of the Texas State Constitution.

Point of error four: Appellant's conviction and life sentence for the aggravated kidnapping of Felipe Martinez and conviction and life sentence for the attempted capital murder (based on the aggravated kidnapping) of Felipe Martinez arising out of the same transaction, violated the federal double jeopardy proscription against multiple punishments for the same offense contained in the United States Constitution.

■ Hernandez concedes he did not raise the issue before the trial court. Hernandez "had the burden to 'preserve, in some fashion, a double jeopardy objection at or before the time the charge [was] submitted to the jury.'" *Gonzalez v. State,* 8 S.W.3d 640, 642 (Tex.Crim.App.

2000)(not yet reported).[1] Points of error three and four are overruled.

■ Point of error five urges:

The appellant's convictions for capital murder, attempted capital murder, and aggravated kidnapping, should be reversed for new trials because the trial court committed reversible error in refusing to admit exculpatory polygraph evidence having a tendency to prove that a co-defendant, and not the appellant, was the shooter.

Hernandez concedes evidence of polygraph examinations is not admissible for any purpose, *Nethery v. State*, 692 S.W.2d 686, 700 (Tex.Crim.App.1985), but urges us to reconsider the rule in light of *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App. 1992). The Court of Criminal Appeals has declined to re-visit the issue. *See Landrum v. State*, 977 S.W.2d 586 (Tex.Crim.App.1998)(Meyers, J., dissenting). As we are bound by existing precedent establishing a *per se* rule of inadmissibility, point of error five is overruled.

■ Points of error six and seven complain of the application paragraph to the guilt-innocence jury charge on attempted capital murder:

Point of error six: Appellant's conviction for attempted capital murder should be reversed for a new trial because the trial court committed fundamental error in the application paragraph of the jury charge, which allowed a conviction for attempted *capital* murder based on a

theory of attempted *murder* only, without a finding of any aggravating felony elevating the offense to a capital felony, in violation of the appellant's state due process rights under the Texas State Constitution.

Point of error seven: Appellant's conviction for attempted capital murder should be reversed for a new trial because the trial court committed plain error in the jury charge, which allowed a conviction for attempted *capital* murder based on a theory of attempted *murder* and without a finding of any aggravating felony elevating the offense to a capital felony, in violation of the appellant's federal due process rights under the United States Constitution.

■ In support of his federal due process claim, Hernandez cites *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. As a matter of due process a conviction may be had only upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Id.* The Texas Code of Criminal Procedure provides the mechanism for implementing the federal due process requirement of conviction only upon proof of every element of the offense beyond a reasonable doubt. It is settled law that an erroneous or incomplete jury charge is reviewed under Article 36.19 of the Texas Code of Criminal Procedure and does not implicate state or federal consti-

1. The indictment stated Hernandez acted "with the specific intent to commit the offense of Capital Murder of Felipe Martinez, Jr." without identifying the aggravating element for that offense. Thus, any aggravating theory could have been included in the charge, not just kidnapping. Similarly, in *Gonzalez* the indictment alleged multiple theories for the greater offense. It appears the Court of Criminal Appeals was influenced by the fact that the double jeopardy problem could have been cured by eliminating the offending theories from the charge and charging the jury only on the theory that did not include bodily injury as an element. By our reading of the opinion, however, its holding on preservation

of error is not limited to situations where multiple punishments may be maintained by presenting an alternate theory in the charge. Indeed, if the error is a forfeitable right as *Gonzalez* suggests, by modern sensibilities the incurability of the error is irrelevant to the issue of whether the complaint has been preserved. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996); *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App.1993). As Presiding Judge McCormick states in *Gonzalez*, the Court of Criminal Appeals's opinions on the subject of double jeopardy have not been a model of clarity. *Gonzalez*, 8 S.W.3d at 642. The tradition continues.

tutional rights. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994); TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981). A constitutional violation occurs only if there is a reasonable likelihood that the jury understood the instructions to allow conviction on proof insufficient to meet the *Winship* standard. *Barrera v. State*, 982 S.W.2d 415, 416–17 (Tex.Crim. App.1998).[2]

■ We must first look to the jury charge to determine whether the charge correctly set forth the law applicable to the case. TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2000). One of the elements of capital murder is the existence of one of the aggravating circumstances enumerated in the statute. TEX. PEN.CODE ANN. § 19.03(a) (Vernon 1994). If a person attempts an offense that may be aggravated, his conduct constitutes an attempt to commit the aggravated offense if an element that aggravates the offense accompanies the attempt. TEX. PEN.CODE ANN. § 15.01(b) (Vernon 1994). Therefore, an element of the aggravating circumstance for capital murder is an element of attempted capital murder. The application paragraph of the charge on attempted capital murder totally omitted any mention of an aggravating circumstance under Section 19.03. Therefore, the charge did not properly apply the law to the case and the charge is erroneous.

■ The standard for our harm analysis is supplied by the case relied upon in Hernandez's argument under point of error six: *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984)(opin. on reh'g). Because Hernandez failed to object to the charge, his conviction will be reversed only if the error caused egregious harm. *Id.* "[T]he actual degree of harm must be assayed in light of the entire jury charge, the

state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

The definitional paragraphs of the charge on attempted capital murder informs the jury, "Our law provides that a person commits the offense of murder if he intentionally or knowingly causes the death of an individual. A person commits capital murder when such person commits murder in course of committing a felony. A person commits an offense, if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended." The definitional paragraph did not identify the felonies enumerated in Penal Code Section 19.03(a)(2) for elevating murder to a capital offense, nor did it set forth for the jury the requirements for attempt of an aggravated offense. *Cf.* PAUL J. McCLUNG AND W. SCOTT CARPENTER, TEXAS CRIMINAL JURY CHARGES § 4:160 James Publ'g 1999). The general portions of the charge do not correctly state the applicable law and thus do nothing to ameliorate the harm from the total omission of the aggravating circumstances in the application paragraph.

The charge included separate counts on capital murder and aggravated kidnapping, but did not connect the language in the aggravated kidnapping count to the attempted capital murder count in such a manner that the jury would understand the attempted murder must have been committed in the course of committing or attempting to commit aggravated kidnapping. Furthermore, aggravated kidnapping was presented to the jury on multiple theories of aggravation, only one of which

---

2. The Court of Criminal Appeals recently overruled a capital murder appellant's Eighth Amendment cruel and unusual punishment and Fourteenth Amendment due process and equal protection complaints to a jury charge because the arguments were not raised in the trial court. *Ladd v. State,* 3 S.W.3d 547, 564

(Tex.Crim.App.1999) ("Appellant's failure to object was not excused by Article 36.19 and *Almanza v. State,* because they are applicable only to violations of Articles 36.14 through 36.18 'which do not implicate state or federal constitutional rights.' *Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App.1994)").

was the murder of Martinez. Therefore, we cannot say the jury must have found the attempt to kill Martinez was committed in the course of kidnapping Martinez.

The jury found Hernandez guilty "as charged in the indictment." The indictment alleged Hernandez "with the specific intent to commit the offense of Capital Murder of Felipe Martinez, Jr., do an act, to-wit: shooting him with a firearm" without specifying the aggravating circumstance. We cannot say that the indictment supplied the omitted element for the jury. *Cf, Dickerson v. State,* 759 S.W.2d 741, 742 (Tex.App.—Beaumont 1988, pet. ref'd).

Martinez testified Hernandez approached him with a gun, pointed it at Martinez's head, and ordered Martinez to get out of his vehicle. Once Martinez complied, Hernandez ordered Martinez to lie down, stuck the gun in Martinez's back, then ordered Martinez to get into a Suburban. Hernandez got into the front passenger seat and other people with guns got into the back of the Suburban with Martinez. Martinez was transported to other locations and vehicles and eventually beaten, shot, and left for dead. The evidence adduced at trial supports a finding that would elevate the offense from attempted murder to attempted capital murder, had one been given to the jury.

Although there is evidence in the record that supports the aggravating element, the charge given the jury is not incomplete but charged a distinct, different offense: attempted murder. *Cf, Lane v. State,* 957 S.W.2d 584, 587 (Tex.App.—Dallas 1997, pet. ref'd)(omission of culpable mental state did not result in egregious harm). The jury charge authorized conviction for attempted capital murder upon finding facts that constitute the offense of attempted murder. The former is a higher grade of offense than the latter. This was not an incidental omission, but went to the very basis of the case and exposed Hernandez to a higher range of punishment without putting the prosecution to its burden of proof on the greater offense. Point

of error six is sustained. As we have found the attempted capital murder conviction to be infirm under state law, we need not decide whether the error in the charge implicates federal due process rights under *Winship.* Therefore, we decline to rule upon point of error seven.

■■■ Next, Hernandez complains of the charge on Count I:

Point of error eight: The trial court committed reversible error in refusing appellant's request to instruct the jury on the lesser included offense of intentional murder only, in this capital murder case.

■■■ A defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Bignall v. State,* 887 S.W.2d 21, 23 (Tex.Crim.App.1994)(citing *Rousseau v. State,* 855 S.W.2d 666, 673 (Tex.Crim.App.1993), and *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App.1981). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Bignall,* 887 S.W.2d at 23. "It does not matter whether the evidence was admitted by the State or the defense. It does not matter if the evidence was strong or weak, unimpeached or contradicted." *Jones v. State,* 984 S.W.2d 254, 257(Tex.Crim.App.1998). The lesser-included offense may be raised if evidence either affirmatively refutes or negates an element establishing the greater offense. *Schweinle v. State,* 915 S.W.2d 17, 19 (Tex.Crim.App.1996). A party is entitled to a lesser-included offense instruction, provided the evidence establishes the lesser-included offense is "a valid, rational alternative to the charged offense." *Arevalo v. State,* 943 S.W.2d 887, 889 (Tex.Crim.App. 1997).

To be entitled to a charge on the lesser-included offense of murder, it had to be possible for the jury in this case to rationally reject the greater, capital offense by finding that Hernandez committed only the murder, but not the aggravating offense of kidnapping. The only evidence identified by Hernandez in support of his argument appears in his brief, as follows:

There was evidence adduced entitling the Appellant to a lesser included offense of intentional murder only. In this regard, Appellant would point to evidence in the record showing Appellant's lack of culpability in the aggravating felony of the original kidnapping of Jonathan Williams. The court will recall the testimony of Felipe Martinez that when he was placed into the stolen Suburban, co-defendant Oscar Vasquez was the person who was holding the gun on him, not the Appellant.

Martinez testified Hernandez held a gun on him at the moment he got into the Suburban. Martinez ended up sitting in the rear seat, with Williams sitting next to Martinez, Vasquez sitting in the seat in front of Martinez and holding a gun on Martinez, and Hernandez sitting in the front passenger seat and telling the driver where to go. Martinez did not know who put Williams in the Suburban right behind him, but Hernandez put Martinez in the Suburban, at gunpoint. Since a parties charge was included in the jury charge, the State was relying on the conduct of Vasquez and the fact that Vasquez held a gun on Williams at some point during the actual transportation of the victim is not evidence that Hernandez did not kidnap Williams. The record does not reflect a rational basis for the jury to have rejected the elevating circumstance of kidnapping and find Hernandez guilty solely of the intentional murder of Williams. The trial court did not err in refusing the lesser-included offense instruction on intentional murder. Point of error eight is overruled.

■ Point of error nine contends:

The trial court committed fundamental error in failing to charge the jury on the lesser included offense of felony murder only, in this capital murder case.

Hernandez did not preserve error for review by requesting a charge on felony murder. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App.1998)(a defensive issue is not applicable to the case unless the defendant timely requests the issue or objects to the omission of the issue in the charge); *Kinnamon v. State*, 791 S.W.2d 84, 96 (Tex.Crim.App.1990), *overruled on other grounds by Cook v. State*, 884 S.W.2d 485, 491 (Tex.Crim.App.1994); *Thomas v. State*, 701 S.W.2d 653, 656 (Tex.Crim.App. 1985) (refusing to consider failure to charge on lesser-included offense absent request or objection). Point of error nine is overruled.

■ Point of error ten contends:

Appellant is entitled to a new punishment hearing, where the trial court committed fundamental error on the aggravated kidnapping charge in its failure to submit an instruction to the jury on the issue of whether the complainant had been released alive and in a safe place, in mitigation of the penalty thereby reducing the punishment range from a first degree to a second degree of 2 to 20 years in prison.

Safe release is a defensive issue that was waived for failure to request its inclusion in the charge. *See Posey* 966 S.W.2d at 63. Point of error ten is overruled.

The remaining points of error challenge either the legal or factual sufficiency of the evidence to sustain the convictions, based upon the State's failure to meet its burden of proof on various elements of the offense.

In reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Gee-*

*sa v. State,* 820 S.W.2d 154 (Tex.Crim.App. 1991). In reviewing the factual sufficiency of the evidence, we review all the evidence impartially, comparing the evidence which tends to prove the existence of an elemental fact in dispute to the evidence which tends to disprove that fact, and determine whether the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). A sufficiency of the evidence challenge is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). A hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* .

■ Point of error eleven urges:

The evidence was factually insufficient to sustain the conviction for the first degree felony of aggravated kidnapping where the uncontroverted evidence clearly showed that the kidnapping victim Felipe Martinez, Junior, who went to a nearby convenience store pay phone and dialed 911, was released alive and in a safe place.

Release alive and in a safe place is a defensive issue that does not become "applicable to the case" until a jury charge on the issue is requested by the defendant. *Posey,* 966 S.W.2d at 62–63. Therefore, appellate review of factual sufficiency regarding this issue in inappropriate, notwithstanding the *Malik* standard.[3]

■ We observe that the issue of safe release is raised only when there is evidence that the defendant performed some overt and affirmative act that brings home to the victim the fact of safe release from captivity. *Wiley v. State,* 820 S.W.2d 401, 411 (Tex.App.—Beaumont 1991, no pet.). The release must occur in a place and manner which realistically conveys to the victim that he or she is now freed from captivity in surroundings where aid is readily available. *Id.* Martinez was taken out into the woods off of Interstate 59, 30 or 45 minutes outside of Houston, beyond any road, where he broke free and ran into the woods, escaping but being shot in the arm, back and legs as he crawled under some brush to elude his attackers. This is escape, not release, and there is no evidence the place was safe, since the only people present in this remote location were there to kill Martinez and Williams. The fact that Martinez survived and eventually made his way to a convenience store does not render the evidence factually insufficient to support the jury's verdict. Point of error eleven is overruled.

Point of error twelve: The evidence was legally insufficient to support the conviction for the attempted capital murder of Felipe Martinez, Jr., since the State's evidence showed the appellant's mere presence at the scene out in the woods with the deceased Jonathan Williams when Martinez was shot with a shotgun by co-defendant Jesse Gonzalez, and there was no evidence that the appellant had the intent to encourage or aid or assist in the shooting of the complainant.

Point of error thirteen: The evidence was factually insufficient to support the conviction for the attempted capital murder of Felipe Martinez, Jr., since the jury's finding that the appellant was a party to the shooting of Felipe Martinez, Junior, was so against the greater

---

**3.** As Judge Meyers noted in his dissent in *Posey,* "[t]his holding stands in stark contrast to recent precedent [*Malik v. State,*] which rejects the notion that parties are responsible for ensuring that the charge embodies their respective 'theories of the case.' " *Posey,* 966 S.W.2d at 71 (Meyers, J., dissenting).

weight of the evidence as to be clearly unjust and wrong, since the State's evidence showed only the appellant's mere presence at the scene out in the woods with the deceased Jonathan Williams when Martinez was shot with a shotgun by co-defendant Jesse Gonzalez.

A person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 1994). In order to establish Hernandez's liability as a party, the State must show that, in addition to the illegal conduct by the primary actor, Hernandez harbored the specific intent to promote or assist the commission of the offense. See Lawton v. State, 913 S.W.2d 542, 555 (Tex.Crim.App.1995).

Hernandez argues he did not aid or assist in the shooting of Martinez because he was still out in the woods with Williams when Martinez was shot. Among the evidence that Hernandez actively participated in the attempted capital murder of Martinez, we find Martinez's testimony that Hernandez forced Martinez into a vehicle at gunpoint and gave directions to the driver for accessing the location where Martinez was shot, then walked with the other victim out into the woods at gunpoint when that other victim was fatally shot. One accomplice, Nick Ortiz, testified that Hernandez, Oscar Vasquez and Ortiz planned the abduction and that Hernandez knew Martinez and Williams would be killed. Hernandez's specific intent that Martinez die can be inferred from the fact that Hernandez personally fatally shot the other victim. We hold the evidence is legally and factually sufficient to support the jury's verdict on attempted capital murder. Points of error twelve and thirteen are overruled.

Point of error fourteen: The evidence was legally and factually insufficient to sustain the conviction for capital murder where the State's evidence failed to show that the killing of the deceased Jonathan Williams took place "during the course of" the commission or of the attempt to commit the kidnapping of the deceased.

Point of error sixteen: The evidence was legally and factually insufficient to sustain the conviction for capital murder where the verdict was so against the great weight and preponderance of the evidence that it was manifestly unjust, and no rational trier of fact could have reasonably concluded that the appellant had the specific intent to cause the death of the complainant during the course of the commission of the kidnapping of the deceased as alleged in the indictment.

The phrase "in the course of committing or attempting to commit" as used in Section 19.03(a)(2) has been defined as "conduct occurring in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of the offense." Riles v. State, 595 S.W.2d 858, 862 (Tex.Crim.App.1980). Hernandez argues the evidence is insufficient because the kidnapping of Williams was completed prior to the shooting and the evidence established the shooting was an "afterthought" accomplished only after Williams was released. According to Martinez, Hernandez ordered Williams out of the vehicle, said, "walk, bitch," and pistol-whipped Williams on the back of the head. Williams walked into the woods, after which Martinez heard Williams say, "No, Amado, no" before hearing gunshots. According to Jesse Gonzales, Hernandez pistol-whipped Williams, then immediately shot him. Williams then ran into the woods, followed by Hernandez and Amado Saldivar, followed by gunfire. According to Nick Ortiz, Hernandez got Williams out, Williams tried to run but was tackled by Saldivar, Williams got up and ran again, then Hernandez shot Williams. Williams started screaming. Hernandez returned to the vehicle, saying he needed some more guns, obtained the guns from Ortiz,

then returned to Williams and shot him. The other accomplices told similar stories. It appears that, when he ordered Williams to walk into the woods, Hernandez intended to release Williams only to his Maker. The evidence is both legally and factually sufficient to support a finding that Hernandez killed Williams during the commission of a kidnapping, that Hernandez formed the intent to restrain Williams before he killed him, and that Hernandez formed the intent to cause Williams's death before Williams was released from that restraint.

■ Hernandez also argues there is evidence in the record that Saldivar, not Hernandez, killed Williams. The only evidence supporting that hypothesis is Martinez's recollection that Williams cried out, "No, Amado, no," and Hernandez's punishment phase testimony that Saldivar shot Williams. Eyewitness testimony identified Hernandez as the triggerman, and the evidence to the contrary is not so overwhelming as to cause us to conclude the verdict is manifestly unjust. Points of error fourteen and sixteen are overruled.

■ Point of error fifteen is not a true challenge to the sufficiency of the evidence to support the conviction, but is a challenge to the corroboration of the extensive accomplice testimony admitted at trial:

> The evidence was insufficient to sustain the conviction for capital murder and attempted capital murder where there was insufficient corroborating evidence independent of the testimony of the accomplice witnesses who testified against the appellant, tending to connect the defendant with the offenses committed.

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). Hernandez argues

Martinez did not see him shoot Williams, and someone other than Hernandez actually shot Martinez.

■ The test for weighing the sufficiency of corroborative evidence is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is evidence which tends to connect the accused with the commission of the offense. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex.Crim.App.1997). It is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need only tend to connect the defendant to the offense. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex.Crim.App.1999). Legal and factual sufficiency standards do not apply to a review of accomplice witness testimony. *Id.* at 463. The accused's mere presence at the scene of the crime is insufficient, by itself, to corroborate accomplice witness testimony, but "evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Trevino v. State*, 991 S.W.2d 849, 852 (Tex.Crim.App.1999)(citing *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex.Crim.App.1996)).

The testimony of Felipe Martinez, Jr., described elsewhere in this opinion, tends to connect Hernandez to both the attempted capital murder of Martinez and to the capital murder of Williams. More than merely present, Martinez's testimony established Hernandez gave orders, directed at least some of the group's movements, held both victims at gunpoint at some point during their ordeal, and, holding Williams at gunpoint, took him out into the woods where Williams perished. Point of error fifteen is overruled.

We affirm the judgment of the trial court as to Count I, capital murder, and Count IV, aggravated kidnapping. We reverse the judgment of the trial court on Count II, attempted capital murder, and

remand the cause for new trial on Count II of the indictment.[4]

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

4. Upon written motion filed by the State, the    trial court dismissed Count III.