Affirmed and Memorandum Opinion filed November 23, 2005









Affirmed
and Memorandum Opinion filed November 23, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00868-CR

____________

 

KENNETH
WAYNE HUNTER, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

___________________________________________________

 

On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 940,741

___________________________________________________

 

M E M O R A N D U M   O P I N I O N

Appellant Kenneth Wayne Hunter
was convicted of aggravated sexual assault of a child.  The jury assessed punishment at twenty-five
years=
imprisonment and a $10,000 fine.  In four
issues, appellant argues that the trial court erred in admitting testimony of
the State=s expert witness, excluding
appellant=s polygraph results, and
overruling appellant=s motion
for new trial based on alleged exculpatory evidence.  Appellant also claims he received ineffective
assistance of counsel at trial.  We
affirm.








I. 
Factual and Procedural Background 

Appellant
is the adoptive father of Jane and Mary,[1]
his wife=s
nieces.  Jane and Mary both moved to the
United States from the Philippines when they were very young; Mary moved when
she was three or four years old, and her sister Jane followed when Jane was
five years old.  When Jane was sixteen
and Mary was eighteen, Jane ran away from home. 
Appellant and his wife had Mary call several people to try to locate
Jane.  Among the people Mary called was
Mary=s former
high school teacher, Cindy Eschenburg, who offered to talk to Mary because Mary
sounded upset on the phone.  Appellant
permitted Eschenburg and another teacher, Marty Hyden, to take Mary to a local
restaurant to talk about Jane.  At the
restaurant, Mary became hysterical and told Eschenburg and Hyden that appellant
had sexually abused her and Jane.  

The next day, Eschenburg called
the police and Child Protective Services. 
An investigation ensued in which the police documented a long list of
sexual offenses appellant allegedly committed against both girls during the years
they lived with him.  Appellant was
eventually charged with a single instance of digitally penetrating Mary=s vagina
in 1996.  Before trial, the State
notified appellant it intended to introduce evidence of other offenses against
Jane and Mary that were uncovered by the investigation. 








At trial, the State called
several witnesses.  Mary testified that
when she was four or five years old, appellant made her touch his penis under
the covers of his bed.  When she was
between six and nine years old, he would put her on his lap, reach under her
clothes, and insert his finger into her vagina. 
Mary said one time appellant=s wife
caught and yelled at them, after which appellant stopped for two or three
years.  Then, when appellant=s wife
was on a trip, appellant touched her again. 
Mary stated that her aunt, who was staying with them at the time, may
have called the police, who arrived shortly after appellant touched her.  However, Mary was uncertain who called them
or if her aunt saw appellant touch her. 
Later, when Mary was nine or ten years old, appellant approached her
from behind while she was washing dishes, unzipped her pants, and touched her
vagina.  Jane walked into the kitchen and
saw what was happening, then left the room and did not tell anyone what she had
seen.  Appellant last touched Mary when
she was eighteen, on an occasion when the two of them were alone in the house.  Appellant told Mary to go to his room and she
complied.  Appellant followed her,
removed her pants, and inserted his penis into her vagina with some difficulty
because it was not erect.

The State called other witnesses
at trial.  Jane testified she saw
appellant fondle Mary in the kitchen and told them she would tell on them but
did not.  According to Jane, when she was
five or six years old, appellant would put her on his lap, move his hand under
her clothes, and insert his finger into her vagina.  She said appellant tried unsuccessfully to
force his penis, which was Areally
limp and soft,@ into her vagina.  She also testified that while they were in
the bathroom, appellant pulled down her shorts and licked her vagina.  Jane said the sexual abuse continued until
she ran away from home.  The State also
called Dr. Robbie Burnett, a clinical psychologist who had worked with Jane and
Mary.  Dr. Burnett testified that Jane
and Mary were former patients and exhibited symptoms Aconsistent
with@ having
been sexually assaulted. 

Appellant took the stand at trial
and denied ever having sexually assaulted either Mary or Jane.  He attempted to introduce the results of a
polygraph examination he had taken that indicated he was not being deceptive
when he denied sexually assaulting Jane and Mary.  However, the trial court excluded the
polygraph evidence.  After appellant was
convicted, he filed a motion for new trial claiming the State had withheld
exculpatory evidence and that he had received ineffective assistance of
counsel.  After a hearing, the trial
court denied appellant=s motion,
and this appeal followed. 








II. 
Issues and Analyses

A.        Did
the trial court abuse its discretion in admitting expert testimony of the
clinical psychologist?

 

In his
first issue, appellant claims the trial court erred in overruling his objection
to Dr. Burnett=s expert testimony that Mary and
Jane displayed characteristics Aconsistent
with@ sexual
abuse victims.  Appellant argues that the
State failed to produce any foundation for Dr. Burnett=s
testimony and used her as a Ahuman
polygraph@ to bolster the testimony of Jane
and Mary.  

We review a trial court=s
decision to admit or exclude scientific expert testimony under an
abuse-of-discretion standard.  Sexton
v. State, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002).  The trial court abuses its discretion when
its ruling is arbitrary, unreasonable, or without reference to any guiding
rules or legal principles.  Lyles v.
State, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993).  Thus, we will uphold the trial court=s
decision as long as it is within the zone of reasonable disagreement, given the
evidence presented and the requirements of Rule 702 of the Texas Rules of
Evidence.  Sexton, 93 S.W.3d at
99.

In 1992, the Court of Criminal
Appeals disavowed the Ageneral
acceptance@ test of Frye v. United States,
293 F. 1013, 1014 (D.C. Cir. 1923), and held that Texas Rule of Evidence
702 governs the admissibility of expert testimony.  Kelly v. State, 824 S.W.2d 568, 571B72 (Tex.
Crim. App. 1992).  Rule 702 provides:

If scientific, technical,
or other specialized knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the
form of an opinion or otherwise.

 








Tex. R. Evid.
702.  In Kelly, the Court of
Criminal Appeals held that, to satisfy Rule 702, novel scientific evidence must
meet a three-pronged test showing that (1) the underlying scientific theory is
valid, (2) the technique applying the theory is valid, and (3) the technique
was properly applied on the occasion in question.  824 S.W.2d at 573.  Kelly also listed seven nonexclusive
factors that could aid the trial court in determining whether the test had been
met.[2]  Id. 
The Court of Criminal Appeals later stated that the Kelly
standard is virtually identical to the standard in Daubert v. Merrell Dow
Pharmaceuticals, 509 U.S. 579 (1993). 
See Jordan v. State, 928 S.W.2d 550, 554 (Tex. Crim. App. 1996).  Kelly was later extended to include all
scientific evidence.  Hartman v. State,
946 S.W.2d 60, 62B63 (Tex.
Crim. App. 1996).  

In Nenno v. State, the
Court of Criminal Appeals recognized the difficulty of demanding rigid
application of the Kelly test to Asoft@ sciences
that rely on experience and training as opposed to the scientific method of the
Ahard@
sciences.[3]  970 S.W.2d 549, 561 (Tex. Crim. App. 1998), overruled
on other grounds by State v. Terrazas, 4 S.W.3d 720 (Tex. Crim. App.
1998).  Our high court announced a less
rigorous Atranslation@ of Kelly
for Asoft@ sciences
in which the relevant questions are (1) whether the field of expertise is a
legitimate one, (2) whether the subject matter of the expert=s
testimony is within the scope of that field, and (3) whether the experts=
testimony properly relies upon and/or utilizes the principles involved in the
field.  Id.  The testimony of a clinical psychologist like
Dr. Burnett qualifies as Asoft@
science.  See Weatherred v. State,
15 S.W.3d 540, 542 n.5 (Tex. Crim. App. 2000). 
Thus, Nenno governs this case.








The trial court conducted a
hearing on Dr. Burnett=s
qualifications as an expert.  In the
hearing, Dr. Burnett testified that she is a licensed professional counselor,
has a Ph.D. in psychology, and has specialized in victims of sexual abuse and
trauma for two decades.  The State
specifically questioned Dr. Burnett on the Nenno factors, and she
testified that psychology and clinical counseling of sexual abuse victims are
legitimate areas of expertise and that the subject matter of her testimony was
within and relies upon the principles involved in those fields.  She further explained her general methodology
for counseling sexual abuse victims and testified that she was familiar with
both Mary and Jane because they had been her patients for about ten
months.  After hearing from both parties
at length, the trial court held the State had met the requirements of Daubert,
Kelly, and Nenno.  We conclude that this ruling was within the
zone of reasonable disagreement. 








Appellant contends the State used
Dr. Burnett as a Ahuman
polygraph@ and that her testimony
impermissibly bolstered the testimony of Jane and Mary.  An expert may not testify that a particular
witness is being truthful.  See Yount
v. State, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993).  Rather, expert testimony is limited to
situations in which the expert=s
knowledge and experience on a relevant issue are beyond that of an average
juror.  Id. at 710B11.  Dr. Burnett did not testify that Jane and
Mary were telling the truth.  Instead,
she testified that based on her extensive experience dealing with sexual abuse
victims, the behavior demonstrated by Jane and Mary were Aconsistent@ with
sexual abuse.  Texas courts have permitted
such testimony.  See Cohn v. State,
849 S.W.2d 817, 819 (Tex. Crim. App. 1993) (allowing expert testimony on Acharacteristics@ of
sexually abused children when expert did not directly testify victims were
sexually abused or telling the truth); Tamplin v. State, No.
14-01-01253-CR, 2002 WL 31662560, at *3 (Tex. App.CHouston
[14th Dist.] Nov. 27, 2002, pet. ref=d) (not
designated for publication) (AExpert
testimony concerning behavioral characteristics typically exhibited by victims
of sexual abuse and describing behavior observed in complaining witnesses is
not improper merely because it embraces the ultimate issue of whether
complainants were telling the truth.@).  Thus, the trial court did not abuse its
discretion when it allowed Dr. Burnett=s
testimony.  Accordingly, we overrule
appellant=s first issue.

B.        Did the trial court abuse its discretion
in refusing to admit appellant=s polygraph evidence? 

 








In his second issue, appellant
claims the trial court erred in denying his motion to admit polygraph evidence
as direct or rebuttal evidence.  He
argues this exclusion violates his Sixth Amendment right to present a defense.  Texas courts have long held that polygraph
evidence is inadmissible for all purposes. 
See Tennard v. State, 802 S.W.2d 678, 683 (Tex. Crim. App. 1991);
Lee v. State, 455 S.W.2d 316, 321 (Tex. Crim. App. 1970).  Appellant invites us to reconsider this
issue, citing a decision by the United States Court of Appeals for the Fifth
Circuit and a subsequent dissenting opinion by Justice Meyers of the Texas
Court of Criminal Appeals.  See United
States v. Posado, 57 F.3d 428 (5th Cir. 1995); Landrum v. State, 977
S.W.2d 586 (Tex. Crim. App. 1998) (Meyers, J., dissenting).  In Posado, the Fifth Circuit held that
a per se rule against polygraph evidence is no longer viable in light of Daubert
and recent advances in polygraph technique.[4]  Posado, 57 F.3d at 432B33.  The Fifth Circuit did not endorse polygraph
evidence, but Amerely remove[d] the obstacle of
the per se rule against admissibility.@  Id. at 434.  Three years after Posado, the Texas
Court of Criminal Appeals declined to reconsider its per se rule against the
admissibility of polygraph evidence in Landrum v. State.  977 S.W.2d at 586.  In his dissenting opinion, Justice Meyers
argued that Texas should follow the Fifth Circuit in reconsidering polygraph
evidence in light of Daubert, Kelly, and Posado and
advances in polygraph technique. Id. at 586B87
(Meyers, J., dissenting).[5]  Since Landrum, the Court of Criminal
Appeals has suggested that polygraphs may be subject to a Daubert analysis,
but it has not explicitly overruled the per se rule against admissibility.  See Ross v. State, 133 S.W.2d 618, 625B26 (Tex.
Crim. App. 2004).  As an intermediate
appellate court, we are bound by controlling authority from the Court of
Criminal Appeals.  See Zarychta v.
State, 44 S.W.3d 155, 162 (Tex. App.CHouston
[14th Dist.] 2001, pet. ref=d).  Although appellant raises an interesting
argument, we must follow precedent and leave any considerations of a change in
the law to the Court of Criminal Appeals. 
Based on existing case law, we overrule appellant=s second
issue.

C.        Did the trial court abuse its discretion
in denying a new trial based on allegedly exculpatory evidence?

 








In his third issue, appellant
claims the trial court erred in overruling his motion for new trial because the
State allegedly withheld material exculpatory evidence.  We review the trial court=s
decision to grant or deny a motion for new trial under an abuse-of-discretion
standard.  Charles v. State, 146
S.W.3d 204, 208 (Tex. Crim. App. 2004). 
When the State withholds evidence favorable to the defendant, due
process is violated if the evidence is material to either guilt or punishment,
irrespective of the good faith or bad faith of the prosecution. Brady v.
Maryland, 373 U.S. 83, 87 (1963); Wyatt v. State, 23 S.W.3d 18, 27
(Tex. Crim. App. 2000).  However, there
is no general right to discovery in a criminal case, and Brady does not
create one.  See Weatherford v. Bursey,
429 U.S. 545, 559 (1977).  To invoke Brady,
the accused must present evidence that (1) the State failed to disclose
evidence, regardless of the prosecution=s good or
bad faith, (2) the withheld evidence is favorable to him, and (3) the evidence
is material, that is, there is a reasonable probability that had the evidence
been disclosed, the outcome of the trial would have been different.  Hampton v. State, 86 S.W.3d 603, 612
(Tex. Crim. App. 2002).  The mere
possibility that undisclosed evidence may have helped the defense or affected
the trial=s outcome does not establish Amateriality@ in the
constitutional sense.  Id.  Whether the evidence is material is viewed in
the context of the overall strength of the State=s
case.  Id. at 613.  To preserve error in making such a claim, a
defendant must make a complaint to the trial court in a timely fashion.  Tex.
R. App. P. 33.1 (a)(1); Wilson
v. State, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999).  To be timely, the complaint must be made as
soon as the grounds for complaint are apparent or should be apparent.  Wilson, 7 S.W.3d at 146.  

Appellant claims the State
notified him that it intended to introduce extraneous acts of anal and vaginal
penetration of both Mary and Jane and then failed to disclose that Jane and
Mary allegedly changed their stories and said he never gained an erection.  Appellant claims he was surprised by these
witnesses= trial testimony, which he claims
undermined his defense strategy of showing that he was medically incapable of
gaining an erection and thus could not have penetrated either of them with an
erect penis, as he believed they would testify. 
However, appellant failed to object when Mary and Jane testified that
his penis was limp.  Rather, he
complained for the first time in his motion for new trial.  Thus, his complaint was untimely, and the
trial court did not err in denying his motion for a new trial.  See Tex.
R. App. P. 33.1(a)(1); Wilson, 7 S.W.3d at 146; State v. Fury,
No. 01-04-00906-CR, __ S.W.3d __, 2005 WL 2670249, at *5 (Tex. App.CHouston
[1st Dist.] Oct. 20, 2005, no pet. h.) (ABy
waiting to raise this issue for the first time in his motion for new trial,
[defendant] either waived any Brady error or failed to show that any Brady
error prejudiced him.@).  

Furthermore, appellant has failed
to show the evidence was exculpatory.  An erection is not a requisite for
penetration.  See Vernon v. State,
841 S.W.2d 407, 409B10 (Tex.
Crim. App. 1992); Wilson v. State, 905 S.W.2d 46, 48 (Tex. App.CCorpus
Christi 1995, no pet.) (AIf
appellant placed his non-erect penis inside complainant, penetration still
occurred.@).  Thus, evidence of appellant=s
inability to gain an erection would not necessarily be exculpatory.  We overrule appellant=s third
issue.








D.
       Did the trial court err in
rejecting appellant=s claim of ineffective assistance of counsel?

 

In his fourth issue, appellant
maintains he received ineffective assistance of counsel.  Both the United States and Texas Constitutions guarantee an
accused the right to assistance of counsel.  U.S. Const. amend. VI; Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. art. 1.051 (Vernon 2005).  This right necessarily includes the right to
reasonably effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668,
686 (1984); Ex parte Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App.
1997).  To prove ineffective assistance
of counsel, appellant must show that (1) trial counsel=s representation fell below an
objective standard of reasonableness, based on prevailing professional norms;
and (2) there is a reasonable probability that the result of the proceeding
would have been different but for trial counsel=s deficient performance.  Strickland, 466 U.S. at 688B92. 
Moreover, appellant bears the burden of proving his claims by a
preponderance of the evidence.  Jackson v. State, 973 S.W.2d 954, 956
(Tex. Crim. App. 1998).

In assessing appellant=s claims, we apply a strong
presumption that trial counsel was competent.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  We presume counsel=s actions and decisions were
reasonably professional and were motivated by sound trial strategy.  See Jackson v. State, 877 S.W.2d
768, 771 (Tex. Crim. App. 1994).  When,
as here, there is no proper evidentiary record developed at a hearing on a
motion for new trial, it is extremely difficult to show that trial counsel=s performance was deficient.  See Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002).  If there is no
hearing or if counsel does not appear at the hearing, an affidavit from trial
counsel becomes almost vital to the success of an ineffective-assistance claim.  Stults v. State, 23
S.W.3d 198, 208B09 (Tex.
App.CHouston
[14th Dist.] 2000, pet.
ref=d). 









Although the Court of Criminal Appeals has stated that it
should be a rare case in which an appellate court finds ineffective assistance
on a record that is silent as to counsel=s trial strategy, that court has been
inconsistent in describing the legal standard by which we should determine
whether a particular case constitutes such a rarity.  See Andrews v. State, 159 S.W.3d 98,
103 (Tex. Crim. App. 2005) (stating that facts at hand presented a Arare case@ in which ineffective assistance can
be found on direct appeal based on a record silent as to counsel=s trial strategy); Andrews,
159 S.W.3d at 104 (Keller, P.J., dissenting) (stating that the Court of
Criminal Appeals has been inconsistent in its approaches to ineffective
assistance claims on direct appeal based on a silent record and indicating that
the court=s approach in Andrews is
inconsistent with its approach in Freeman v. State, 125 S.W.3d 505 (Tex.
Crim. App. 2003)); see also Storr v. State, 126 S.W.3d 647, 655B58 (Tex. App.CHouston [14th Dist.] 2004, pet ref=d) (Frost, J., dissenting) (stating
that court should follow latest guidance from the Court of Criminal Appeals in Freeman).  The Court of Criminal Appeals recently
indicated that appellate courts should find ineffective assistance as a matter
of law if no reasonable trial strategy could justify trial counsel=s conduct, regardless of whether the
record adequately reflects trial counsel=s subjective reasons for acting as
she did.  See Andrews, 159 S.W.3d
at 102.  Shortly thereafter, the Court of
Criminal Appeals returned to an earlier formulation and stated that, absent an
opportunity for trial counsel to explain her actions, appellate courts should
not find ineffective assistance unless the challenged conduct was A>so outrageous that no competent
attorney would have engaged in it.=@  Goodspeed v. State, No. PD-1882-03, __
S.W.3d __, 2005 WL 766996, at *2 (Tex. Crim. App. Apr. 6, 2005) (quoting Garcia
v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).  Accordingly, we follow the legal standard
from Goodspeed.

Appellant argued in his motion
for new trial that he received ineffective assistance of counsel because the
trial court refused to reveal the identity of jurors for a potential jury
misconduct investigation.  This claim
fails because it is based on the trial court=s ruling
and not on the conduct of appellant=s trial
counsel.   








On appeal, appellant also claims
ineffective assistance of counsel based upon his trial attorney=s failure
to interview Jane and Mary.  In support
of this assertion, appellant points only to an affidavit filed by one of appellant=s trial
attorneys in support of his motion for new trial.  In the affidavit, appellant=s trial
counsel claimed the State withheld exculpatory evidence that undermined the
defense.  The affidavit contains nothing
which addresses whether appellant=s defense
counsel interviewed Jane and Mary. 
Therefore, we reject this claim of ineffective assistance because
appellant has not shown that his defense counsel failed to interview Jane and
Mary. 

Further, even if appellant=s counsel
did fail to interview Jane and Mary, appellant has not shown a reasonable
probability that interviewing them would have affected the outcome of the
trial.  See Strickland, 466 U.S.
at 694.  If Jane and Mary did change
their stories at trial, as appellant alleges, no evidence shows that
interviewing them prior to trial would have caused him any less surprise when
they testified.  Additionally, as
discussed in the previous section addressing appellant=s Brady
claim, appellant=s
inability to gain an erection is not necessarily exculpatory and thus was
unlikely to affect the trial=s
outcome.  Finally, the testimony by Jane
and Mary about the limp state of appellant=s penis
was not an element of the crime charged, which was digital penetration of Mary=s
vagina.  There was sufficient evidence at
trial to support a conviction for that charge. 
For these reasons, appellant has failed to show a reasonable probability
that the result of the trial would have been different but for his trial
counsel=s alleged
failure to interview Jane and Mary. 
Accordingly, we overrule appellant=s fourth
issue.  

Having overruled all of appellant=s issues,
we affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed November 23, 2005.

Panel consists of Chief Justice Hedges and Justices Anderson and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  For purposes
of this opinion, we have adopted AJane@ and AMary@ as pseudonyms.





[2]  Those factors
include (1) the extent to which the underlying scientific theory and technique
are accepted as valid by the relevant scientific community, if such a community
can be ascertained, (2) the qualifications of the expert(s) testifying, (3) the
existence of literature supporting or rejecting the underlying scientific
theory and technique, (4) the potential rate of error of the technique, (5) the
availability of other experts to test and evaluate the technique, (6) the
clarity with which the underlying scientific theory and technique can be
explained to the court, and (7) the experience and skill of the person(s) who
applied the technique on the occasion in question.  Kelly, 824 S.W.2d at 573.





[3]  The Ahard@ and Asoft@ sciences were distinguished in Weatherred v. State, 15 S.W.3d 540,
542 n.5 (Tex. Crim. App. 2000).  There,
the Court of Criminal Appeals, citing The New Columbia Encyclopedia 2450
(1975), described Ahard sciences@ as Aareas in which precise measurement, calculation, and
prediction are generally possible, including mathematics, physical science,
earth science, and life science.@  Id. 
By contrast, Asoft sciences@ are Agenerally thought to include such fields as
psychology, economics, political science, anthropology, and sociology.@  Id. 





[4]  The Fifth
Circuit held that polygraph evidence is subject to a Daubert analysis.  Id. at 435.  On remand, the district court held the
polygraph evidence in Posado inadmissible under both Federal Rules pf
Evidence 702 and 403.  United States
v. Ramirez, No. CRIM. H-93-252, 1995 WL 918083, at *3B4 (S.D. Tex. Nov. 17, 1995). 





[5]  Justice Meyers
pointed to the United States Supreme Court=s
decision to hear argument in United States v. Scheffer, a military case
that involved a Sixth Amendment argument against per se inadmissibility of
polygraph evidence similar to appellant=s
claim.  Id. at 587 n.2 (Meyers,
J., dissenting).  However, the Supreme
Court subsequently upheld the per se exclusion of polygraph evidence in court
martial proceedings and held that such exclusion was not an unconstitutional
infringement on an accused=s right to present a defense.  United States v. Scheffer, 523 U.S.
303, 314B15 (1998).