Opinion filed August 31, 2006
















 
 
  
 
 







 
 
  
 
 




Opinion filed August 31, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00269-CR 

                                                    __________

 

                                         CHUN LIN WU, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                 On
Appeal from the County Criminal Court No. 2

 

                                                          Dallas County, Texas

 

                                            Trial
Court Cause No. MB04-52488-B

 



 

                                                                   O
P I N I O N

The jury convicted Chun Lin Wu of
prostitution.  The trial court assessed
her punishment at ninety days confinement in the county jail and a $400 fine
but suspended the imposition of the sentence and placed her on community
supervision for one year.  We affirm.

                                                              I.
Background Facts

Wu was arrested as part of an undercover operation
conducted in response to a prostitution complaint.  She was charged with one count of
prostitution and pleaded not guilty.  The
jury convicted Wu, and the trial court assessed punishment.








                                                                       II.
Issues

  Wu
challenges her conviction with two issues. 
Wu argues that the trial court erred by refusing to quash the
information for lack of adequate notice and that the trial court erred by
refusing to admit evidence of a polygraph examination.

                                                            III.
Standard of Review

The denial of a motion to quash and the decision
to admit or exclude evidence are reviewed under an abuse of discretion
standard.  Montgomery v. State,
810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (admit or exclude evidence); Smith
v. Dallas, 895 S.W.2d 449, 453 (Tex. App.CDallas
1995, pet. ref=d)
(motion to quash).  A trial court abuses
its discretion if it acts without reference to any guiding rules or principles
or acts in an arbitrary or unreasonable manner.   Kendrick v. Garcia, 171 S.W.3d 698,
703 (Tex. App.CEastland
2005, pet. filed).

                                                                   IV.
Discussion

Wu argues initially that the information did not
provide adequate notice of the particular charge alleged.  The information alleged that Wu:

[D]id
unlawfully then and there knowingly offer to and agree with M. IGO, hereinafter
styled complainant, to engage in sexual conduct, to-wit: SEXUAL INTERCOURSE,
with complainant for a fee, against the peace and dignity of the state.

 

Wu filed a motion to quash the information contending that it
failed to provide sufficient notice of the fee offered or agreed to and that it
did not indicate which individual offered or agreed to pay the fee.  Wu contended that, under the information, the
alleged crime could have occurred in one of several ways.  The trial court denied Wu=s motion.

Wu argues on appeal that the information is
inadequate because it does not specify which role she played in the
transaction:  customer or supplier.  The State answers that the trial court did
not abuse its discretion because Wu=s
motion to quash did not comply with Tex.
Code Crim. Proc. Ann. arts. 27.08 or 27.09 (Vernon 1989) and because the information
provided sufficient notice.  The State
notes the information tracked Tex. Pen.
Code Ann. ' 43.02
(Vernon 2003) and argues the allegedly missing information is actually an
improper request that the State plead the evidence upon which it intended to
rely.








Courts have recognized that Section 43.02 provides
three modes of committing the offense of prostitution: (1) offers to engage,
(2) agrees to engage, or (3) engages in sexual conduct for a fee.  See Frieling v. State, 67 S.W.3d 462,
470 (Tex. App.CAustin
2002, pet. ref=d).  Each is a distinct means of committing
prostitution.  Milczanowski v. State,
645 S.W.2d 445, 446 (Tex. Crim. App. 1983). 
When a statute defines the manner or means of commission in alternative
ways, a charging instrument fails for lack of specificity if it neglects to
identify which of the statutory means it addresses.  State v. Mays, 967 S.W.2d 404, 407
(Tex. Crim. App. 1998); see also Tullous v. State, 23 S.W.3d 195, 196-97
(Tex. App.CWaco
2000, pet. ref=d) (in
the face of a motion to quash, an information must provide more specific
allegations if the statute identifies more than one method by which it can be
violated).

A complaint that an information does not provide
adequate notice alleges a defect of form Tex.
Code Crim. Proc. Ann. arts. 21.02(7), 27.09(2) (Vernon 1989); Olurebi v. State, 870
S.W.2d 58, 61 (Tex. Crim. App. 1994).  Wu=s motion to quash was sufficient to
alert the trial court that she faced prosecution under a statute that
criminalizes different and distinct acts. 
Under this information, Wu could have been convicted for offering
to engage in sexual conduct for a fee or, alternatively for agreeing to
engage in sexual conduct for a fee. 
Consequently, the trial court erred when it failed to require the State
to provide more specificity.  

This error requires reversal only if it prejudiced
Wu=s substantial rights.  Tex.
Code Crim. Proc. Ann. arts 21.19, 21.23 (Vernon 1989). 
To evaluate prejudice, we must determine if, in the context of the case,
the lack of sufficient notice had an impact on Wu=s
ability to prepare a defense and, if so, how great an impact.  Adams
v. State, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986).[1]  Wu contends she was harmed by the lack of
notice because Ait makes
all the difference in the world as far as trial preparation is concerned if the
defendant is accused of supplying the service or buying the service.@ 
Wu does not elaborate on the differences, and we do not appreciate any
significant difference.








Wu received actual notice of the State=s allegations beyond the
information.  The probable cause affidavit
alleged that Officer Michael T. Igo observed Wu involved in suspicious activity
and that he then engaged her in conversation. 
During this conversation, she agreed to engage in sexual intercourse for
a fee.

The record indicates that the State=s case was simple and straightforward.
The State made a brief opening statement during which it described the incident
as follows:

You=re
going to hear how she took him to a bedroom; how he asked her for a
massage.  She said it would cost around
$60.  He said, AWhat
else can I get?@  And she simply stated sexual intercourse and
demonstrated with a hand gesture.  She
said it would be C he asked
her if that was okay.  She said, AYes,@
and that the total amount was going to be $100 for sexual intercourse that day.

The State called Officer Igo as its sole witness.  He testified that he was working undercover
investigating a prostitution complaint. 
He went to an apartment where he was met by Wu.  He told her he wanted a massage.  She led him to a room with a massage table
and bed.  Wu told Officer Igo that the
massage would cost $60.  When he asked if
he could get anything else, she said, AYou
mean ...@ and made
a motion with her hands that he interpreted as sexual intercourse.  He then asked, ADo
you mean we can f--k?@  Wu smiled and shook her head up and
down.  When Officer Igo asked how much,
she responded, AA
hundred.@  Officer Igo then identified himself and
placed her under arrest. 

Wu=s
defense was equally straightforward.  The
cross-examination of Officer Igo was focused on his investigation and
credibility.  Wu was provided an
interpreter for the trial, but Officer Igo testified that their conversation
had been in English.  Wu=s counsel challenged this by
highlighting the fact that Wu was provided an interpreter immediately after her
arrest.  Wu=s
counsel also cross-examined Officer Igo about his report, suggesting that
Officer Igo=s
testimony was at odds with the report. 
Finally, Wu=s counsel
implied that Wu was operating a legitimate massage business and that Officer
Igo simply failed to realize this because of an inadequate investigation.  Wu did not testify or call any witness.  Wu=s
closing argument was aimed squarely at Officer Igo=s
investigation and credibility, concluding, A[T]hey
really don=t deserve
a guilty verdict in this case.@  








Wu=s
defensive strategy was clearly to challenge Officer Igo=s
credibility by focusing on language issues, the lack of corroboration, and
ambiguity in the conversation.  It is
reasonable to conclude that a more specific information would have assisted Wu=s counsel and allowed a more focused
challenge, but it is not reasonable to conclude that it would have
significantly impacted her defense.  The
State=s
prosecution and Wu=s defense
were both based on Officer Igo=s
credibility.  The jury either believed
that the transaction occurred as Officer Igo described it or that it did not.  This either or analysis would not have been
altered by a more specific information. 
Wu=s first
issue is overruled.

Wu argues in her second issue that the trial court
erred by excluding the results of her polygraph examination.  Wu=s
counsel arranged for her to be examined by Wayne Baker.  He prepared a report describing the
exam.  Baker reported that, with the help
of an interpreter, he asked Wu if she had offered or agreed to have sexual
contact with the undercover officer for money or if she intended to have sexual
contact with him for money.  Wu responded
no to each question, and Baker interpreted the test results as indicating no
deception.

The State filed a motion in limine in which it
objected to any testimony concerning the polygraph test.  The trial court sustained the State=s objection.  Wu did not testify or offer evidence on the
reliability of polygraph examinations but did tender Baker=s report during her case-in-chief.  The trial court excluded Baker=s report.

Wu acknowledges that Texas courts have consistently refused to
allow polygraph examinations into evidence but contends that they are
scientifically recognized and reliable evidence.  Wu argues that Texas courts should reconsider the per se
rule against the admission of polygraph examination results because the case
upon which the rule is based has been disavowed.








The Texas Court of Criminal Appeals has
consistently held that polygraph examinations are inadmissible for all
purposes.  See, e.g., Nethery v. State,
692 S.W.2d 686, 700 (Tex. Crim. App. 1985).[2]   This rule dates back to Frye v. United
States, 293 F. 1013 (D.C. Cir. 1923), which held that a systolic blood
pressure test was inadmissible absent evidence of general acceptance in the
scientific community.  In 1992, the Texas
Court of Criminal Appeals held that Frye=s
general acceptance standard had been replaced by the then recently adopted
Texas Rules of Criminal Evidence.  Kelly
v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).  The court in Kelly considered the
admissibility of DNA evidence and did not directly address polygraph
exams.  The court has, however, had
several opportunities since Kelly to reconsider the per se rule and has
refused to do so.  See, e.g., Landrum
v. State, 977 S.W.2d 586 (Tex. Crim. App. 1998).  Consequently, every intermediate court to
consider this issue since Kelly has held that polygraph exam results are
still inadmissible.[3]

The United States Supreme Court recently held that
a per se rule excluding polygraph exams is not unconstitutional.  United
 States v. Scheffer, 523 U.S. 303, 312
(1998).  The Supreme Court=s opinion noted, and in fact reflected,
the ongoing debate concerning the reliability of polygraph examinations.  Eight justices agreed with the Court=s judgment but were evenly divided over
the wisdom of a per se ban.[4]  However, all eight concluded that individual
jurisdictions could reasonably reach different determinations regarding their
admissibility.  Id. 
The Texas Court of Criminal Appeals has announced Texas=s
position on this issue.  Until that court
or the legislature reconsiders and changes that position, we must continue to
enforce the per se rule.  Wu=s second issue is overruled.

                                                         V.
Holding

The judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

August 31, 2006

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











     [1]Wu
cites Bonner v. State, 640 S.W.2d 601 (Tex. Crim. App. 1982), and Adams, 707 S.W.2d 900, for the proposition that
the sufficiency of notice must be determined solely by reference to the
charging instrument.  Having found
insufficient notice, it is now appropriate for us to consider the entire record
to assess harm.  Id. at 903; see also White v.
State, 50 S.W.3d 31, 39 (Tex. App.CWaco
2001, pet. ref=d).





     [2]For
a general discussion of the admissibility of polygraph exams in state and
federal courts, see Gary A. Udashen and Nathan Kight, The Law of
Polygraph Evidence, 29th Annual
Advanced Criminal Law Course ch.
27 (2003).





     [3]See,
e.g., Hernandez v. State, 10 S.W.3d 812, 818 (Tex. App.CBeaumont 2000, pet. ref=d); Hall
v. State, 970 S.W.2d 137, 142 (Tex. App.CAmarillo
1998, pet. ref=d); Perkins v. State, 902 S.W.2d 88, 92-95 (Tex.
App.CEl Paso 1995, pet. ref=d).





     [4]Justices
Kennedy, O=Connor, Ginsberg, and Breyer concurred in the judgment
and in part with the opinion but wrote separately to express reservations about
the wisdom of a per se ban and to disagree with some of the grounds offered in
support of an exclusion, such as the diminishment of the jury=s role in making credibility determinations.  523 U.S. at 318.  Only Justice Stevens dissented.  Id.
at 320.